**IN THE UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT OF MARYLAND**<br>
*Southern Division*

| | |
|---|---|
| **RICHELET ETIENNE,** | * |
|     **Plaintiff/Counter-Defendant,** | * |
| v. | *    Case No.: PWG-14-2800 |
| **AMERI BENZ AUTO SERVICE LLC,**<br>   *et al.*, | * |
| | * |
|     **Defendants/Counter-Plaintiffs.** | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Richelet Etienne worked from January 2013 to April 2014 at the automotive repair shop that Defendants Ameri Benz Auto Service LLC ("Ameri Benz" or "ABA") and Abebe Alemu, Ameri Benz's owner, operated. Etienne Decl. ¶¶ 2–3, 19, Pl.'s Ex. 1, ECF No. 31-3; Alemu Aff. ¶¶ 1–3, Defs.' Ex. 7, ECF No. 35-7. Ameri Benz paid him $400 per week for what Etienne calculated to be sixty-five or more hours of work per week, but some weeks he received less than $400, and for the last two weeks, he received no pay at all. Etienne Decl. ¶¶ 2–3, 6–10, 19; Alemu Aff. ¶ 3; Alemu Ans. to Interrogs. No. 9, Pl.'s Ex. 3, ECF No. 31-5. Dissatisfied with the amount Ameri Benz paid him for the amount of work he did, Etienne filed suit against Defendants, claiming, *inter alia*,[1] that Defendants paid him below minimum wage and did not pay him overtime wages for the hours he worked in excess of forty hours per week, in violation

---

[1] Etienne also brings a common law claim of conversion based on Defendants' retention of tools and two Mercedes vehicles that he left on Ameri Benz's premises when he resigned, although he later recovered his tools. Compl. ¶¶ 78–104, ECF No. 1. Defendants filed a counterclaim for damages from intentional interference with property and conversion. Countercl., ECF No. 20. Alemu concedes that Defendants retained the two vehicles, but he asserts that Etienne "does not own one of the cars," which "was left by a customer," and "he owes ABA for parts, labor and storage on the other." Alemu Ans. to Interrogs. No. 10, 14.

of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 – 219, and that Defendants docked his pay without reason and did not pay him for his last two weeks of employment, in violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann, Lab. & Empl. §§ 3-501 – 3-509.  Compl., ECF No. 1.

Now pending is Plaintiff's motion for partial summary judgment, as to his statutory claims only (Counts I and II).  ECF No. 31.[2]  He insists that "[t]he sole dispute as to Counts I and II involves whether or not Mr. Etienne was a covered employee under the . . . FLSA[], or an excluded independent contractor."  Pl.'s Mem. 1.  In his view, "[t]he wage violations themselves are straightforward. Mr. Etienne was employed by ABA and Mr. Alemu at a substandard wage of $6.15 per hour, with no overtime pay, in violation of the FLSA."  Id.  Etienne bases his wage calculation on what he characterizes as two undisputed facts: He worked sixty-five or more hours per week, and Ameri Benz paid him $400 per week.  Etienne contends that "Defendants do not have competent evidence to challenge Mr. Etienne's wage and hour evidence."  Pl.'s Reply 1. Etienne asserts that it also is undisputed that Defendants did not obtain his written consent before docking his pay and did not pay him all of the wages they owed him within two weeks of the end of his employment, in violation of the MWPCL.  Pl.'s Mem. 2.

Etienne is correct that the undisputed facts establish that he was a covered employee. But, because genuine disputes exist as to the number of hours Etienne worked, I will deny Etienne's motion as to Count I.  I also will deny it as to his claim in Count II for deducted wages, as a genuine dispute exists as to whether those wages were deducted or paid in advance. Because it is undisputed that Defendants did not pay Plaintiff for his last two weeks of work, I

---

[2] The parties fully briefed the motion.  ECF Nos. 31-1, 35, 36.  A hearing is not necessary.  See Loc. R. 105.6.

will grant his motion as to his claim in Count II for these wages. But, I will deny his motion as to treble damages because a genuine dispute exists regarding whether Defendants withheld wages based on a bona fide dispute.

### Standard of Review

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id*.

### Alemu's Liability

According to Etienne, "Defendant Alemu operated Ameri Benz . . . in a forfeit[ed] status since October 1, 2010," such that "ABA was forfeit[ed] for the entire time that it employed Mr.

Etienne," and therefore Alemu as officer/owner of the corporate defendant is the proper defendant. Pl.'s Mem. 3–4. Indeed, the Maryland Department of Assessments and Taxation ("DAT") Business Services "UCC and Charter Search" results for Ameri Benz, conducted October 19, 2014, demonstrate that Ameri Benz's status was "FORFEITED," and had been since October 1, 2010. Md. DAT Printout, Pl.'s Mem. Ex. 6–7, ECF Nos. 31-8, 31-9.

> In Maryland law, a person who operates a business in the name of a corporation after the corporate charter has been forfeited [and "prior to any revival"], and incurs debts, is individually liable for the debts. *In re Hare,* 205 F. Supp. 881, 883 (D. Md. 1962); *see also Moore v. Occupational Safety & Health Review Comm'n,* 591 F.2d 991 (4th Cir. 1979) (recognizing that Maryland dissolution statutes have been construed as imposing personal responsibility on corporate directors for liabilities incurred in the continued operations of the dissolved corporation's business after forfeiture of its charter). Indeed, knowingly transacting business in the name of a corporation with a forfeited charter is a crime in Maryland. Md. Code Ann., Corps. & Ass'ns, § 3–514(a).

*Bd. of Trustees of Operating Engineers Local 37 Benefit Fund v. Doracon Contracting, Inc.*, No. MJG-09-1857, 2011 WL 6736235, at *2 (D. Md. Dec. 21, 2011). Defendants do not rebut Plaintiff's argument regarding Alemu's liability, thereby implicitly conceding that it has merit. Given that the evidence shows that Ameri Benz was forfeited at the time Plaintiff worked at Defendants' garage, I find that Alemu is liable to the extent Ameri Benz otherwise would be liable if in good standing. *See id.*

### Admissibility of Alemu's Affidavit

Etienne contends that Alemu's affidavit, through which Defendants offer the bulk of their evidence in opposition to Plaintiff's motion, is "not competent for summary judgment purposes" because he submitted it "subject to the penalty of perjury that the following statements are true *to the best of [his] knowledge*," *see* Alemu Aff. 1, and therefore it "do[es] not comply with 28 U.S.C. § 1746, which governs federal declarations." Pl.'s Reply 3. Etienne does not cite any authority, beyond the statute, in support of his position.

In this Court, an affidavit substantially complies with § 1746 when it is true to the best of the affiant's "knowledge and belief," or "personal knowledge and recollection." *See Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 353 (D. Md. 2011) (concluding that affidavit "signed 'under the penalties of perjury,' stating that [it] is 'true and accurate to *the best of [her] knowledge and belief*' . . . substantially complied with the requirements of 28 U.S.C. § 1746"; citing *Overly v. Keybank Nat'l Ass'n,* No. 08-662–SEB–TAB, 2010 WL 2560406, at *5 (S.D. Ind. June 23, 2010), as "holding that declarations stating, 'I affirm under the penalties of perjury that the foregoing is true, and accurate *to the best of my knowledge*,' 'substantially comply' with § 1746" and *Smith v. Psychiatric Solutions, Inc.,* No. 08-3/MCR/EMT, 2009 WL 903624, at *5 (N.D. Fla. Mar. 31, 2009), as "stating that the language, 'true and accurate *to the best of my knowledge and belief*,' complies with § 1746, '[s]o long as the declaration contains the phrase "under penalty of perjury" and states that the document is true'" (emphases added) (footnotes omitted)); *Verrier v. Sebelius*, No. CCB-09-402, 2010 WL 1222740, at *3–4 (D. Md. Mar. 23, 2010) (concluding that affidavits were admissible where "affiants signed under penalty of perjury that the statements they made were 'true and correct', and also indicated that they were made *to the best of their personal knowledge and recollection*; reasoning: "Courts have discretion to allow declarations with subscriptions that are not in precise compliance with § 1746. In fact, the statute itself requires simply that verification be in 'substantially' the prescribed form. What is crucial is that the declarant sign his or her name under penalty of perjury." (emphasis added) (citations omitted)). And, this Court's Local Rule 601.3 provides:

> For purposes of these Rules, "affidavit" means either (1) a sworn statement the contents of which are affirmed under the penalties of perjury to be true or (2) an unsworn declaration as provided under 28 U.S.C. § 1746. Unless the applicable rule expressly requires the affidavit to be made on personal knowledge, the statement may be made to the best of the affiant's knowledge, information, and belief.

Notably, for summary judgment purposes "an affidavit or declaration used to support or oppose a motion must be made on *personal knowledge*."  Fed. R. Civ. P. 56(c)(4) (emphasis added). Thus, Alemu's affidavit, made on "knowledge" alone, appears inadmissible.  *See id.*; Loc. R. 601.3; *see also Hamilton*, 807 F. Supp. 2d at 353; *Verrier*, 2010 WL 1222740, at *3–4.

Etienne also argues that the "'/s'" signature does not satisfy § 1746's requirement of an actual signature." Pl.'s Reply 3.  Again, Etienne does not provide any case law in support of his position.

This Court's Local Rules do not address the signature requirement.  But this Court's Electronic Filing Requirements & Procedures for Civil Cases Manual provides:

> Documents required to be signed by persons who are not counsel of record in a particular case (verified documents, affidavits, etc.), may be submitted in electronic format in any of the following ways so long as counsel has and maintains a signed copy.
>
> - Unless the document is excessively lengthy . . . , it can be scanned and then filed electronically.
> - An electronic version of the document bearing a "/s/" can be filed along with a statement by counsel that he or she has a signed copy, as in the following example.
>
>   _____/s/*_____
>
>   *Polly Plaintiff*
>
>   *\*Counsel hereby certifies that he or she has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.*
>
> - An electronic version of the document bearing a "/s/" can be filed with a scanned copy of the signature page as an attachment.
>
>   _____/s/*_____
>
>   *Polly Plaintiff*
>
>   *\*A copy of the signature page bearing an original signature is attached hereto.*

Electronic Filing Requirements & Procedures for Civil Cases, § III.F.4, at 66 (6th ed. Apr. 2013), www.uscourts.gov (follow Forms & Manuals hyperlink to PDF of Manual).  Here, Alemu's

affidavit is signed "/s/" and does not include "a statement by counsel that he or she has a signed copy." *See id.* Consequently, it is inadmissible on this basis as well. *See id.*

Notably, "[a] party may object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible into evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Provided that Alemu has personal knowledge of the facts stated in his affidavit, he can resubmit his affidavit on "personal knowledge" and counsel can file a copy with Alemu's handwritten signature or an electronically signed copy that indicates the counsel has the original signed copy on file, such that it is in admissible form. *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4); Loc. R. 601.3; Electronic Filing Requirements & Procedures for Civil Cases, § III.F.4, at 66. Therefore, I will consider Alemu's affidavit for purposes of deciding Plaintiff's motion, but any decision in Defendants' favor will be contingent on Alemu refiling an admissible affidavit within two weeks of the date of this Memorandum Opinion. *See* Fed. R. Civ. P. 56(c)(2). Should he fail to do so, I will reconsider this Memorandum Opinion and Order, and determine whether it requires revision.

## **Employee or Independent Contractor?**

Plaintiff must qualify as an employee of Ameri Benz to recover wages under either the FLSA or the MWPCL. *See Butler v. PP & G, Inc.*, No. WMN-13-430, 2013 WL 5964476, at *2 (D. Md. Nov. 7, 2013). The FLSA defines "employee" as "'any individual employed by an employer,'" and it defines "to employ" as "'to suffer or permit to work.'" *Id.* (quoting 29 U.S.C. §§ 203(e)(1), (g)). The MWPCL defines "employer" as "'any person who employs an individual in [Maryland].'" *Id.* (quoting Md. Code Ann., Lab. & Empl. § 3–501(b)). "An 'employee' within the purview of the [MWPCL] is one who would be considered an agent or employee, as opposed to an independent contractor, at common law." *Fenzel v. Grp. 2 Software, LLC*, No.

DKC 13-0379, 2016 WL 865363, at *12 (D. Md. Mar. 7, 2016) (quoting *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 388 (D. Md. 2011)).  For the FLSA, also, an employee is covered, whereas an independent contractor is not.  *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006).

An employee cannot waive FLSA protection.  *See Butler*, 2013 WL 5964476, at *2. Likewise, an employer cannot avoid FLSA or MWPCL liability by labeling its employee as an independent contractor.  *See id.* (citing *Heath v. Perdue Farms, Inc.,* 87 F. Supp. 2d 454, 457 (D. Md. 2000)). Therefore, "to determine whether an individual is an employee, courts must look to the 'economic reality' of the relationship by analyzing . . . six factors," none of which is dispositive on its own:

> "(1) The degree of control that the putative employer has over the manner in which the work is performed;
>
> (2) The worker's opportunities for profit or loss dependent on his managerial skill;
>
> (3) The worker's investment in equipment or material, or his employment of other workers;
>
> (4) The degree of skill required for the work;
>
> (5) The performance of the working relationship; and
>
> (6) The degree to which the services rendered are an integral part of the putative employer's business."

*Id.* (quoting *Schultz*, 466 F.3d at 305).  These factors come from *United States v. Silk,* 331 U.S. 704 (1947), and are called "the *Silk* factors." *See Schultz,* 466 F.3d at 305.  The "ultimate question" is whether Plaintiff was "'dependent on the business [he] served, or, conversely, whether [he was] in business for [himself].'"  *Butler*, 2013 WL 5964476, at *2 (quoting *Schultz*, 466 F.3d at 305).

Viewed in the light most favorable to Defendants as the non-movant, the evidence shows that Defendants allowed Plaintiff to sell his "cars for a living from the Defendants' garage" and

paid him "$400.00 per week to answer the telephone, and assist Defendants' customers who brought their cars in for repair by writing a description of the work requested and giving it to a mechanic and receiving payment from Defendants' customers when the work was completed." Alemu Aff. ¶¶ 1–2. He provided "[c]ustomer service on an as needed basis" and had "no hours that [he] had to work." Alemu Ans. to Interrogs. Nos. 2, 3. Etienne performed these tasks "approximately 4 to 6 hours a day, six days per week." Alemu Aff. ¶ 4. He did not invoice Defendants for his work. Etienne Decl. ¶ 9; Alemu Ans. to Interrogs. No. 11. Under these facts, the answer to the "ultimate question" is that Plaintiff was "'in business for [himself],'" selling his own cars. *See Butler*, 2013 WL 5964476, at *2 (quoting *Schultz,* 466 F.3d at 305). Therefore, in terms of his car sales, Etienne was not Defendants' employee and is not entitled to recover wages under the FLSA or MWPCL. *See id.*

Yet, with regard to the 24 to 36 hours per week for which Defendants paid Plaintiff to perform administrative tasks such as answering phones, writing work orders, and taking payments, he clearly was an employee, as these are not tasks requiring a high degree of skill or specialized knowledge, and they are integral to running an automotive repair shop. *See id.* Moreover, there is no evidence that he supervised any Ameri Benz employees or could control how he performed these tasks. To the contrary, Etienne declares that he "was not a supervisor"; "had no ability to hire or fire employees"; and "was in no way free to choose how to perform the tasks to which [he] was assigned." Etienne Decl. ¶¶ 8, 10. Thus, as a matter of law, Etienne was Defendants' employee, albeit only for the hours he spent performing these tasks. *See Butler*, 2013 WL 5964476, at *2.

**FLSA Claim (Count I)**

Under the FLSA, employers must "compensate employees for all of the hours worked, at a rate that is not less than the federal minimum wage rate." *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 889 (D. Md. 2011) (citing 29 U.S.C. § 206(a)(1)). Minimum wage for the period in question was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Additionally, an employee working more than forty hours per week must "receive[] compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Given that it is undisputed that Defendants employed Etienne and paid him $400 per week, he is entitled to summary judgment on the FLSA claim if he worked sixty-five hours per week, as he claims, such that Defendants paid him less than minimum wage and no overtime.

Defendants, as the employer, "bear[] the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by the employees." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 309 (D. Md. 2014) (citing 29 U.S.C. § 211(c)). Plaintiff insists that his "evidence and testimony as to his wage and hours *should* be credited on summary judgment, because [Defendants did not produce] wage and hour records . . . during discovery." Pl.'s Mem. 9 & n.9. In response to Plaintiff's document production requests, Defendants stated that "[a]ll records or data compilations regarding payments made to Mr. Etienne by ABA during his tenure with ABA" were "[t]o be provided," Alemu Resp. to Req. for Prod. of Docs. 7, Pl.'s Ex. 4, ECF No. 31-6, and they do not contest Plaintiff's assertion that they failed to produce any such records. Thus, Defendants have conceded implicitly that they do not have a record of the hours Etienne worked. Indeed, "a response to a request for production of documents which merely promises to produce the requested documents at some unidentified time

in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)([4]) is treated as a failure to answer or respond." *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997).

Under these circumstances, the employee may prove the hours that he worked by "'prov[ing] that he has in fact performed work for which he was improperly compensated'" and "'producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *See Butler*, 47 F. Supp. 3d at 309 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) (emphasis added)). If the employer does not produce evidence to the contrary, "'the court may then award damages to the employee, even though the result be only approximate.'" *Id.* (quoting *Anderson*, 328 U.S. at 687–88); *see also Pforr v. Food Lion Inc.*, 851 F.2d 106, 108 (4th Cir. 1988) (The FLSA "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty."). Thus, "'[a] prima facie case can be made through an employee's testimony giving his recollection of hours worked ....'" *Hurd v. NDL, Inc.*, No. CCB-11-1944, 2012 WL 642425, at *4 (D. Md. Feb. 27, 2012) (quoting *Donovan v. Kentwood Dev. Co., Inc.,* 549 F. Supp. 480, 485 (D. Md. 1982)); *see Schultz v. All-Fund, Inc.*, No. JFM 06 CV 2016, 2007 WL 2333049, at *4 (D. Md. Aug. 13, 2007) (plaintiffs' affidavits sufficient for summary judgment in their favor); *Marroquin v. Canales,* 505 F. Supp. 2d 283, 297 (D. Md. 2007) ("[E]mployees have the initial burden of proving they worked a certain numbers of hours, which can be proved through an employee's testimony giving his recollection of hours worked." (internal quotations omitted)).

The employee's testimony is not, however, sacrosanct. Significantly, the employer may rebut the employee's testimony, and like any other testimony, it is subject to a credibility determination. *See Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *6

(D. Md. Nov. 5, 2012) (stating that plaintiff's approximated testimony may form basis for damages award "'*if* considered credible by the trier of fact'" and "*if* the employer does not successfully rebut the employee's statement"), *report and recommendation adopted*, No. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013) (quoting *Lopez v. Lawns 'R' Us*, No. DKC 07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008)) (emphasis added); *Chao v. Self Pride, Inc.*, No. RDB-03-3409, 2006 WL 469954, at *& (D. Md. Jan. 17, 2006) (finding affidavits sufficient for summary judgment in plaintiff's favor where they were unrebutted). Credibility is a matter for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Here, Plaintiff states in his Declaration that he worked at least sixty-five hours per week as a term and condition of his employment. Etienne Decl. ¶¶ 6–10. Plaintiff argues that, "[d]uring discovery, Defendants did not dispute this fact, indicating only that it believed that he did not have to come to work if he did not want to," Pl.'s Mem. 8 (citing Alemu Ans. to Interrogs. No. 2). Certainly, Defendants stated that "[t]here were no hours that Mr. Etienne had to work," in response to Plaintiff's request that Alemu "[s]tate the hours per week that Mr. Etienne worked during his tenure with ABA." Alemu Ans. to Interrogs. No. 2. Plaintiff could have challenged this answer as incomplete or evasive and sought sanctions or to compel a discovery response pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), (4), (d)(1)((A)(ii). Indeed, Plaintiff could have sought, as a sanction, an order "directing that [Plaintiff's hours] be taken as established for purposes of the action, as [Plaintiff] claims." *See* Fed. R. Civ. P. 37(b)(2)(A)(i), (d)(3). Plaintiff did not. This response (or absence thereof) on its own, however, is not, as

12

Plaintiff argues, tantamount to a concession that Plaintiff's representation of the hours he worked is accurate. Moreover, Defendants offer an affidavit that "Plaintiff worked approximately 4 to 6 hours a day, six days per week," or twenty-four to thirty-six hours per week. Alemu Aff. ¶ 4. At trial, Plaintiff may be able to use Alemu's interrogatory response to impeach the credibility of this affidavit, if admissible, or any equivalent testimony that Alemu may offer. But, for now, considering this evidence in the light most favorable to Defendants, the non-movants, Plaintiff did not work in excess of forty hours per week or receive less than minimum wage. A genuine dispute exists as to these material facts, and summary judgment is not appropriate on Count I. *See* 29 U.S.C. §§ 206(a)(1), 207; *Gionfriddo*, 769 F. Supp. 2d at 889; Fed. R. Civ. P. 56(a).

### **MWPCL Claim (Count II)**

Plaintiff argues that Defendants are liable under the MWPCL because they "illegally docked Mr. Etienne's pay without his consent and without providing him a written explanation," in violation of Lab. & Empl. § 3-503.[3] Pl.'s Mem. 12.

> Among other things, the MWPCL prohibits an employer from "mak[ing] a deduction from the wage of an employee" unless one of four conditions is satisfied. A deduction is permitted if it is:
>
>> (1) ordered by a court of competent jurisdiction: (2) authorized expressly in writing by the employee; (3) allowed by the Commissioner because the employee has received full consideration for the deduction; or (4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit.

*Bonilla v. Dops, Inc.*, No. GJH-14-3055, 2016 WL 828096, at *6 (D. Md. Feb. 29, 2016) (quoting Lab. & Empl. § 3-503). Defendants offer evidence that they advanced, rather than deducted, Plaintiff's wages. Specifically, in his affidavit, Alemu stated that "[t]he checks

---

[3] Section 3-507.2 "impliedly allows" for "a private right of action for claims under § 3-503. *See Bonilla v. Dops, Inc.*, No. GJH-14-3055, 2016 WL 828096, at *1 n.5 (D. Md. Feb. 29, 2016) (citing Marshall v. Safeway Inc., 88 A.3d 735, 743–46 (Md. 2014)).

13

submitted by the Plaintiff showing less than $400.00 are not examples of the Plaintiff's check being docked, but instead, examples of when he had received an advance" and "the $400.00 [was] reduced by the amount advanced to the Plaintiff." Alemu Aff. ¶¶ 7–8. Likewise, in his Answers to Interrogatories, Alemu asserted that Defendants only reduced Etienne's pay when he "request[ed] an advance." Alemu Ans. to Interrogs. No. 7, Jt. Rec. 11. Thus, provided that Alemu resubmits his affidavit as discussed above, a genuine dispute exists as to whether Defendants deducted Plaintiff's wages, and Plaintiff is not entitled to judgment as a matter of law. *See Bonilla*, 2016 WL 828096, at *6; Lab. & Empl. § 3-503; Fed. R. Civ. P. 56(a).

Plaintiff also argues that Defendants are liable under the MWPCL because they "illegally refused to pay him for his final two weeks of work," in violation of § 3-505(a), and, in his view, "[t]hese acts . . . cannot be said to be part of a bona fide dispute." Pl.'s Mem. 12.

> With regard to the payment of regular wages, the MWPCL provides than an employer "shall pay each employee at least once in every 2 weeks or twice in each month," Lab. & Empl. § 3–502(a)(1)(ii), and that an employer shall notify an employee, at the time of hire, of his or her rate of pay; shall not decrease the wage without advance notification equivalent to the length of a pay period; and shall pay the employee all wages due upon termination, *id.* § 3–505(a). The employee has a cause of action against the employer under § 3–507.[2](a), and § 3–507.[2](b) provides that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

*Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 796 (D. Md. 2010).

Defendants do not dispute that they did not compensate Plaintiff for his last two weeks of work when his employment ended. *See* Alemu Ans. to Interrogs. No. 9. Instead, they contend that they were not obligated to pay the wages because a bona fide dispute existed as to Plaintiff's entitlement to those wages, Defs.' Mem. 3, 10, because "Mr. Etienne owes ABA money," Alemu Ans. to Interrogs. No. 9. Alemu asserts that "Plaintiff stole one hundred dollars by

charging a customer $630.00 and reporting the sale to be for $530.00" and similarly "stole one hundred dollars by selling tires to a customer for #180.00 and reporting the sale to be for $80.00." Alemu Aff. ¶¶ 11, 14. Alemu also states that "Plaintiff embezzled a gear selector switch which cost $93.99"; "stole a mirror from a car sitting on Defendant's lot, sold the mirror to a customer for $200.00, then stole the $200.00 from the Defendant"; and "stole a registration tag from a customer's car that was on Defendant's lot." *Id.* ¶¶ 12–13, 16.

Defendants cite a case from the Middle District of Tennessee that held that "'[t]o require an employer to pay wages due an employee who is indebted to the employer for an outright theft would be a perversion of justice . . . .'" Defs.' Mem. 9 (citing *Marshall v. Hendersonville Bowling Ctr.*, 483 F. Supp. 510, 516 (M.D. Tenn. 1980), *aff'd without reported op.*, 672 F.2d 917 (6th Cir. 1981)). But, in this Court,

> [t]he question of whether [an employer's] withholding of the commissions [or wages] was the result of a bona fide dispute has relevance only as to [an employee's] entitlement, under § 3–507.[2](b), to additional (up to treble) damages, attorneys' fees, and costs. The right to recover the commissions [or wages] themselves, provided for in § 3–507.[2](a), does not depend on whether they were withheld as the result of a bona fide dispute.

*Admiral Mortgage, Inc. v. Cooper*, 745 A.2d 1026, 1030 (Md. 2000). Because it is undisputed that Defendants did not pay Plaintiff's wages for his last two weeks of employment, Plaintiff's motion for summary judgment will be granted as to Count II, with regard to his wages for the last two weeks.[4] As for treble damages, however, because Alemu's affidavit establishes a genuine dispute of material fact regarding whether the withholding of wages was "'a result of a

---

[4] This amount may, of course, be offset by Defendants' counterclaims for damages from intentional interference with property and conversion. Thus, there would be no "perversion of justice" if Plaintiff indeed stole from Defendants in excess of his wages due. *See Marshall*, 483 F. Supp. at 516.

bona fide dispute,'" I will deny summary judgment on treble damages. *See Monge*, 751 F. Supp. 2d at 796 (quoting Lab. & Empl. § 3-507.2(b)).

### **ORDER**

Accordingly, it is, this 29th day of March, 2016, hereby ORDERED that

1. Plaintiff's Motion for Partial Summary Judgment, ECF No. 31, IS GRANTED IN PART AND DENIED IN PART, subject to the requirements of Paragraph 2, below.

    a. It IS DENIED as to the FLSA claim (Count I) and the MWPCL claim for wage deductions in Count II.

    b. It IS GRANTED as to the MWPCL claim for two weeks of unpaid wages, at a rate of $400.00 per week, for a total of $800.00.

    c. It IS DENIED as to treble damages on the MWPCL claim.

2. The denial of Plaintiff's Motion is contingent on Defendant Abebe Alemu's submission of an affidavit that complies with 28 U.S.C. § 1746, Fed. R. Civ. P. 56(c)(4), Local Rule 601.3, and this Court's Electronic Filing Requirements & Procedures for Civil Cases, § III.F.4, at 66, within two weeks of the date of this Order.

/S/
Paul W. Grimm
United States District Judge